WALKER ET AL., APPELLEES, *v.* CITY OF BELPRE, APPELLANT.

[Cite as Walker v. Belpre, 14 Ohio App. 2d 17.]

(No. 296—Decided July 27, 1967.)

*Mr. Roger F. Redmond,* for appellees.
*Mr. Leigh Fisher* and *Mr. James R. Addison, Jr.,* for appellant.

GRAY, J. (Presiding.)  This cause is in this court on appeal on questions of law and fact from a judgment of the Court of Common Pleas of Washington County.

Plaintiff Walker is the owner of lot No. 4 in Holstein Addition to the village (now city) of Belpre.  He purchased it on June 26, 1963.  Plaintiff Digman is the owner of lot No. 3 in such addition.  He purchased the lot in December 1947.  Plaintiff Loudermilk is the owner of lot No. 2 in such addition.  She purchased the lot in July of 1955.  The three lots are contiguous.

In 1950, a comprehensive zoning ordinance was passed by the village of Belpre by which these 3 lots were zoned "residential."

The owners of the three lots are desirous of having the lots rezoned for commercial purpose, and, as rezoned, they are desirous of selling them to Texaco, Inc., for a filling station site.

The rezoning matter was placed before the zoning board of appeals which recommended that the lots be rezoned. Article XVII of the zoning ordinance states that only council can amend the zoning ordinance. Upon hearing the matter council rejected the recommendation of the zoning board of appeals and, by ordinance, confirmed the zoning of the three lots as they were originally zoned.

Plaintiffs claim that since the construction of a highway by-pass near their lots the classification of these lots has changed and that they now are only suitable for commercial structures.

Some claim has been made that they have decreased in value, but upon reading the record it readily appears that in at least one instance no effort has been made to sell the lot to anyone other than Texaco, so in this instance it would be difficult to determine whether the value of the lot has increased or decreased. No evidence was introduced to show the specific loss in value of any of the three lots, but the bare statement was made that if the lots were not rezoned such inaction on the part of the defendant and its officers and agents would amount to confiscation.

On the other hand, there was substantial credible evidence that if the three lots were rezoned commercial, the Craig lot adjoining the three lots would be substantially damaged in value, i. e., on the order of $3,500—$4,000.

Upon considering the evidence on the one hand, plaintiffs claim that their properties are now commercial because of the construction of the by-pass near their homes, with the attendant increased traffic, noise, dust, dirt, fumes, danger, etc. Defendant claims that two of the plaintiffs bought the lots long after the lots were zoned residential and the third did not complain that his lot was zoned residential at the time the zoning ordinance was passed, and only after they had an opportunity to make an advantageous sale of their properties were they interested in having the property rezoned. Defendant

claims further that, while it may be advantageous to rezone the properties for plaintiffs, such rezoning has no relation to the public, health, safety, morals or general welfare of the community.

The plaintiffs feeling aggrieved by the failure of council to rezone the three lots filed this independent action seeking a declaratory judgment and injunctive relief on the ground that the action of council resulted in the confiscation of their properties. The trial court held that the action of the council of the city of Belpre in reaffirming the zoning of the three lots in question as "residential" was confiscatory and unreasonable.

The defendant feeling aggrieved by this action of the trial court filed its notice of appeal.

We think that the trial court was in error in reversing the decision of the council of the city of Belpre.

We are of the opinion that the original zoning of the city of Belpre was comprehensive; that the three lots in question were zoned "residential" as part of an over all plan for the development of land use in that city; and that the attempt to rezone the three lots in question was "spot zoning." *Willott* v. *Beachwood,* 175 Ohio St. 557; 8 McQuillen, Municipal Corporations 223 *et seq.*

The effect of having a filling station on the proposed site would be to increase the traffic in the neighborhood for the remaining lot owners.

The general theory of the law in such situations is stated in 8A McQuillen, Municipal Corporations 271, which says:

"'* * * 'The court should preserve and enforce rather than limit the legislative functions of local zoning authorities.' * * *'"

We think that this theory has been spelled out in *Willott* v. *Beachwood,* 175 Ohio St. 557, wherein O'Neill, J., speaking for the court said at page 559:

"'* * * It must be assumed that each councilman considered the matter independently and was aware of public opinion and formulated his own opinion of what the public welfare of his municipality demanded.

"The power of the court in such matters as this is

20

extremely limited, and the court can not usurp the legislative function by substituting its judgment for that of the council. Municipal governing bodies are better qualified, because of their knowledge of the situation, to act upon these matters than are the courts.

"The determination of the question of whether regulations prescribed by a zoning ordinance have a real or substantial relation to the public health, safety, morals or general welfare is committed, in the first instance, to the judgment and discretion of the legislative body. * * * The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.

"Even though the court, on the facts presented, might decide otherwise than did council, so long as the matter is reasonably debatable, the court has no authority to interfere. * * *"

Therefore, the judgment of the Court of Common Pleas is hereby reversed and final judgment awarded the defendant.

*Judgment for defendant.*

ABELE and DUFFY, JJ., concur.

DUFFY, J., of the Tenth Appellate District, sitting by designation in the Fourth Appellate District.